UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **Sacred Heart of Jesus Parish; Joseph** and **Renee Boutell**; **Peter** and **Katie Ugolini**, <br><br> Plaintiffs, <br><br> v. <br><br> **Dana Nessel,** in her official capacity as Attorney General of Michigan; **John E. Johnson, Jr.**, in his official capacity as Executive Director of the Michigan Department of Civil Rights; **Portia L. Roberson**, **Zenna Faraj Elhason**, **Gloria E. Lara**, **Regina Gasco-Bentley**, **Anupama Kosaraju**, **Richard Corriveau**, **David Worthams**, **and Luke R. Londo**, in their official capacities as members of the Michigan Civil Rights Commission, <br><br> Defendants. | Case No. 1:22-cv-01214 <br><br> Honorable Jane M. Beckering <br> Magistrate Judge Phillip J. Green <br><br> **Corrected Joint Stipulations** |

Pursuant to the Case Management Order (ECF No. 79), Plaintiffs and Defendants have conferred and now jointly stipulate to the following:

**I.      Jurisdiction and Venue**

1. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343.
2. Venue is proper under 28 U.S.C. § 1391(b).

## II.     Plaintiffs

3.     Plaintiff Sacred Heart of Jesus Parish, Grand Rapids, is a corporation organized under the Michigan Nonprofit Corporation Act with its principal place of business in Grand Rapids, Michigan.

4.     Sacred Heart Academy is an apostolate or ministry operated by Sacred Heart of Jesus Parish.

5.     Plaintiffs Joe and Renee Boutell are parents of children at Sacred Heart.

6.     Plaintiffs Peter and Katie Ugolini are parents of children at Sacred Heart.

## III.     Defendants

7.     The Michigan Civil Rights Commission (Commission) and Michigan Department of Civil Rights (Department), are responsible for enforcing the Elliott Larsen Civil Rights Act (ELCRA or Act).

8.     John E. Johnson, Jr., is the current Executive Director of the Department and is responsible for executing the Commission's policies. Mich. Comp. Laws § 37.2602(a).

9.     The Department has authority to receive, initiate, investigate, conciliate, adjust, dispose of, issue charges, and hold hearings on complaints alleging violations of the ELCRA.

10.     Portia L. Roberson, Zenna Faraj Elhasan, Gloria E. Lara, Regina Marie Gasco, David Worthams, Luke R. Londo, Richard R. White, III, and Rosann L. Barker are the current members of the Commission.

11.     The Department may initiate complaints for violations of the Act. Mich. Comp. Laws § 37.2602(c).

12. A commissioner, director, or agency authorized by the commission or director may also initiate a complaint in the public's interest. Mich. Admin. Rule § 37.4(2).

13. Defendant Dana Nessel is the current Michigan Attorney General.

14. The Department of Attorney General acts as legal counsel for the Commission and Department.

15. The Department and Commission have authority to administer and enforce the Act.

## IV. Sacred Heart's Sincerely Held Religious Beliefs and Religious Exercise

16. Sacred Heart Academy is a parish-run Catholic school in the Diocese of Grand Rapids, Michigan.

17. Sacred Heart sincerely believes that its mission is to "restore all things in Christ."

18. Sacred Heart sincerely believes that its purpose is to "recover the 'Beauty ever ancient, ever new' through an integrated curricula that forms the whole person inspiring the hearts of Catholic students to know, love and serve God."

19. Sacred Heart sincerely believes that it exists to support parents in forming their children in the Catholic faith by providing a classical Catholic education.

20. The school is the only classical Catholic school of its kind in the surrounding area.

21. In accordance with its sincerely held religious beliefs, Sacred Heart provides a Christ-centered education based in the Word of God, which is contained in Sacred Scripture, Sacred Tradition, the Magisterium of the Catholic Church (the

Church's teaching authority exercised by popes and bishops), and the Catechism of the Catholic Church.

22. Sacred Heart Parish's pastor is the final decision-maker for the school, but he is subordinate to the Bishop of Grand Rapids, David J. Walkowiak.

23. Sacred Heart Academy's handbook and moral expectations are derived from and rely on the Catechism of the Catholic Church.

24. In accordance with its sincerely held religious beliefs, Sacred Heart's student discipline policies seek to form students in virtue and are based in the Catechism of the Catholic Church.

25. A true and accurate copy of Sacred Heart's Student Handbook is attached as Exhibit 1 hereto.

26. Sacred Heart sincerely believes that parents are the primary and principal educators of their children and that the school exists to supplement and support parents in their educational role.

27. Sacred Heart sincerely believes that it has a religious duty to build an intentional Catholic community and culture.

28. Sacred Heart welcomes any family desiring the formation offered in its Catholic classical setting.

29. At Sacred Heart of Jesus Parish and Sacred Heart Academy, families are striving to build an intentional Catholic community. They want the distinctly Catholic formation and culture that Sacred Heart provides children.

30. Sacred Heart serves nearly 400 children from pre-kindergarten through the twelfth grade.

31. For students in second grade and up, Sacred Heart begins each school day with Mass.

32. The lower grades, who have not yet received First Communion, attend these school Masses several times per week.

33. All Sacred Heart faculty are required to attend daily Mass.

34. Sacred Heart sincerely believes that in order to correctly teach truth to its students, its curriculum must necessarily be founded on a proper understanding of human anthropology.

35. Sacred Heart has offered an elective course on Pope St. John Paul II's teachings called the Theology of the Body, a true and accurate copy of which is attached as Exhibit 2 hereto.

36. The Theology of the Body course lays out the Church's teaching on sexuality and marriage, but these teachings are also woven throughout the entire Sacred Heart curriculum.

37. Sacred Heart does not receive state or federal funding.

38. Sacred Heart sincerely believes that it has a religious duty to build an intentional Catholic community around its faculty and staff.

39. In furtherance of its sincerely held religious beliefs, Sacred Heart seeks to pass on the Catholic faith to students by requiring all faculty and staff to support, live, and model the Catholic faith and its doctrine and morals.

40. Following diocesan policy, Sacred Heart requires all school employees to become certified catechists, i.e., to be certified to teach the Catholic faith.

41. Sacred Heart sincerely believes it is the job of every employee to support, live out, model, and teach the Catholic faith and its doctrine.

42. Sacred Heart requires all its employees to be Catholics who support the Church's moral and doctrinal teachings, including its teachings on marriage and human sexuality.

43. Every year employees sign a "memorandum of understanding" outlining their religious and moral duties and they publicly swear an "oath of fidelity" to Church teaching at a Mass. A true and accurate copy of the Faculty Memo and Oath is attached as Exhibit 3 hereto.

44. The Faculty Memo and Oath explains that the Academy "is rooted in the reality that Truth is a person, Jesus Christ, and that complete formation of the human person necessarily requires formation of mind, body, and soul."

45. In the Faculty Memo and Oath, all employees swear to hold fast to the Catholic Church's deposit of faith in its entirety, faithfully hand it on and explain it, and avoid any teachings contrary to it.

46. Sacred Heart requires that its employees be responsible for integrating the life of the Church and the organic unity of the Catholic faith into the curriculum presented to Sacred Heart's students.

47. A true and accurate copy of a Sacred Heart Faculty Handbook is attached as Exhibit 4 hereto.

48. Sacred Heart requires its employees to fulfill their duties "all for the purpose of assisting in fulfilling the Academy's mission of assisting families, forming Catholics, and cultivating culture." Ex. 3 at 1.

49. Sacred Heart maintains a standard of conduct for its employees and requires them to agree that they will support and exemplify in conduct and expression both Catholic doctrine and morality as articulated in the Catechism of the Catholic Church.

50. Sacred Heart's standard of conduct requires that employees must be consistent, in expression and example, with the teaching and practice of the Catholic faith and shall not advocate, encourage, or counsel beliefs or practices that are inconsistent with the Catholic faith.

51. Sacred Heart has adopted these requirements because it sincerely believes that the Catholic faith is better transmitted to and retained by young people when they are exposed to an authentic Catholic community living out Christian principles.

52. Sacred Heart embraces the Catholic doctrine that all people should be treated with dignity, respect, and charity—even those who reject the Church's teachings. C.C.C. ¶ 2358.

53. Sacred Heart embraces the Catholic Church's teachings on marriage and human sexuality in belief and practice.

54. Sacred Heart sincerely believes in the Catholic doctrine that "God created man in his own image . . . male and female he created them." C.C.C. ¶ 2331.

55. Sacred Heart sincerely believes in the Catholic doctrine that human sexuality is a unitive and procreative gift reflecting the nature of God and that sexual acts are exclusively reserved for the loving and permanent bond of marriage, which can only exist between one man and one woman. C.C.C. ¶ 2332.

56. Sacred Heart sincerely believes in the Catholic doctrine that all sexual activity outside of marriage is gravely sinful. C.C.C. ¶¶ 2396, 2400.

57. Sacred Heart sincerely believes the Catholic doctrine on human sexuality and marriage are foundational and essential to the Catholic faith.

58. Sacred Heart sincerely believes that the Catholic faith rejects the notion that a man or woman can "transition" to a gender inconsistent with his or her biological sex.

59. Sacred Heart sincerely believes the Catholic doctrine that "[e]veryone, man and woman, should acknowledge and accept his sexual identity" and that "[e]ach of the two sexes is an image of the power and tenderness of God, with equal dignity though in a different way." C.C.C. ¶¶ 2333, 2335.

60. Sacred Heart sincerely believes that the idea that a person's identity can be inconsistent with his or her biological sex undercuts Catholic doctrine on basic structures of Catholic belief.

61. In response to guidelines issued by the Michigan State Board of Education, the Bishop of Grand Rapids, David J. Walkowiak, issued a statement

explaining that the idea that a person's identity can be inconsistent with his or her biological sex is incongruent with Catholic teaching and that Catholic schools "will stand firm in our belief that all humans are created in the image and likeness of God, male and female" and that "a person's sexual identity is determined at conception." A true and accurate copy of the Bishop Statement is attached as Exhibit 5 hereto.

62. Sacred Heart's teaching methods reflect Catholic doctrine that mankind is created in two distinct but complementary sexes, male and female.

63. Sacred Heart requires all employees to embrace and follow the Church's doctrine on marriage and human sexuality.

64. In accordance with its sincerely held religious beliefs, Sacred Heart requires its faculty and staff to model authentic masculinity and femininity by demonstrating to young boys and girls what it means to be a Catholic man or woman.

65. Sacred Heart employs religious and lay persons as teachers and other staff members.

66. Sacred Heart hires new teachers each year and advertises open employment positions on its website and on third-party sites as positions arise.

67. Sacred Heart's employment advertisements emphasize a requirement that employees believe, support, and model the Catholic faith.

68. Sacred Heart requires all employees to avoid all beliefs or practices inconsistent with Catholic doctrine or morals.

69. Sacred Heart would not approve an employee's request to use pronouns or bathrooms inconsistent with the employee's biological sex, because Sacred Heart sincerely believes that to do so would be incompatible with the Catholic vision of the human person and human flourishing.

70. Sacred Heart's job postings explain that employees are required to be practicing Catholics whose public lives are lived in conformity with the moral teachings of the Church.

71. A true and accurate copy of Sacred Heart's job postings are attached as Exhibit 6 hereto.

72. As part of their job descriptions, teachers are expected to "integrat[e] Jesus Christ, the life of the Church and the organic unity of the Catholic faith into the curriculum and classroom environment." Ex. 6, Job Postings, at 1.

73. In furtherance of its sincerely held religious beliefs, Sacred Heart divides its high school students into single-sex "households" or "houses" to build up community, train older students in leadership, and provide mentorship for younger students.

74. Sacred Heart divides students by sex in houses due to its commitment to Catholic teaching on the distinctness and complementarity of each sex.

75. In accordance with its sincerely held religious beliefs, Sacred Heart maintains separate restroom facilities for males and females.

76. In accordance with its sincerely held religious beliefs, Sacred Heart maintains separate athletic teams for males and females.

77. Sacred Heart organizes houses, restrooms, and sports teams by biological sex to reflect its sincerely held religious belief that each person is made in God's image and likeness as male or female, to help the students learn their identity as beloved sons or daughters of God, and to model authentic Christian masculinity or femininity.

78. Sacred Heart has had students who struggle with gender discordance (also known as gender dysphoria).

79. In accordance with its sincerely held religious beliefs, Sacred Heart only refers to students and employees by pronouns that align with biological sex.

80. Sacred Heart maintains a student handbook, student agreement, and other student policies requiring students to live in conformity with Catholic doctrine.

81. Sacred Heart recruits, admits, and retains only students who agree to abide by Sacred Heart's faith-based policies.

82. Sacred Heart disciplines students who fail to abide by Sacred Heart's faith-based policies.

83. Sacred Heart teaches students, in word and deed, Catholic doctrine on marriage and sexuality.

84. In accordance with its sincerely held religious beliefs, Sacred Heart has a policy and practice of recruiting, offering positions for, hiring, and retaining only employees who adhere to and agree to abide by all tenets of the Catholic faith, including by:

  a. exclusively recruiting and hiring employees who adhere to Catholic doctrine, including doctrine on marriage and sexuality, in their lives;

  b. declining to recruit and hire employees who oppose Catholic doctrine, including doctrine on marriage and sexuality, and maintaining a policy or practice to this effect;

  c. publishing any statement expressing its Catholic beliefs when advertising open employment positions;

  d. making any written or oral inquiry about a job applicant's religious beliefs and commitment to Catholic doctrine;

  e. expressing a preference for Catholic employees living in accordance with Catholic doctrine;

  f. ensuring its employees live in accordance with Catholic doctrine by requiring them to sign the memorandum of understanding and swear the oath of fidelity to the Catholic faith; and

  g. disciplining or discharging any employee who fails to live in accordance with Catholic doctrine and maintaining any policy or practice to that effect.

85. In accordance with its sincerely held religious beliefs, Sacred Heart will not approve or grant student requests to use a restroom, wear uniforms, or play on a sports team inconsistent with that student's biological sex.

86. In accordance with its sincerely held religious beliefs, Sacred Heart will not affirm a "gender identity" that is inconsistent with the person's biological sex.

87. Sacred Heart sincerely believes that to affirm a "gender identity" that is inconsistent with a person's biological success is harmful and would require lying to the person in question and others, which would be sinful. See C.C.C. ¶ 2485.

88. Sacred Heart will not affirm any individual's "preferred pronouns" inconsistent with biological sex because Sacred Heart sincerely believes that to do so would conflict with the Catholic faith and its doctrine, lie about the person's identity, and deter the person's authentic flourishing.

89. In accordance with its sincerely held religious beliefs, Sacred Heart will not operate in a manner inconsistent with Catholic teachings in provision of educational services, in employment, or in any services offered to the public.

## V. Parent Plaintiffs - The Boutells and Ugolinis

90. Joe and Renee Boutell have children attending Sacred Heart Academy.

91. Renee Boutell has volunteered on the "Liturgical Celebration Team," a team that works to integrate the life of the Church into the school by, for example, hosting special celebrations for the school in honor of Catholic feast days.

92. Joe Boutell has been part of the Security Team for the Parish.

93. Both Joe and Renee have also been members of the New Family Team which gives tours of the school and serves as resources for new Sacred Heart families.

94. The Boutells have chosen to send their children to Sacred Heart because of the authentic Catholic community, the genuine charity, and the formation in virtue that they experience at Sacred Heart.

95. The Boutells keep their children at Sacred Heart because of the access to the Sacraments, including daily Eucharist, and because everything about Sacred Heart points to and flows from the sacramental life of the Catholic Church.

96. The Boutells sincerely believe that Sacred Heart is the only place where they can send their children to receive a holistic moral, spiritual, and academic formation in the Catholic faith.

97. Peter and Katie Ugolini have children attending Sacred Heart Academy.

98. The Ugolinis chose Sacred Heart because the Catholic faith is paramount and permeates every aspect of the academics, community, and culture.

99. The Ugolinis value the authentic Catholic message that their children receive each day as part of the Sacred Heart community.

100. In accordance with their sincerely held religious beliefs, the Ugolinis want their children to receive Catholic formation and encouragement to strive for holiness from their peers.

101. As a science teacher at Sacred Heart, Katie Ugolini sincerely believes that she has a religious duty to teach her students only that which aligns with the teachings of the Catholic Church.

102. In accordance with Sacred Heart's and her own sincerely held religious beliefs, Katie Ugolini teaches her students that every person's biological sex is immutable.

103. The Boutells and Ugolinis sincerely believe the teachings of the Catholic Church on marriage and sexuality, and they sincerely believe they have a religious duty to raise their children in the Catholic faith.

104. The Boutells and Ugolinis sincerely believe that they, as parents, have the first responsibility for the education of their children and have a religious duty to choose schools that will best help them in their task as Christian educators.

105. The Boutells and Ugolinis have exercised what they sincerely believe is their religious duty to form their children in the Catholic faith by choosing to send their children to Sacred Heart Academy.

106. The Boutells and Ugolinis sincerely believe that formation in the Catholic faith comes not just from formal catechesis but also from learning by the example of others authentically living the Catholic faith.

107. The Boutells and Ugolinis sincerely believe that it is essential to their children's spiritual well-being that their children be surrounded by a true, good, and beautiful Catholic culture at school where students, teachers, priests, and families all strive for holiness together.

108. The Boutells and Ugolinis have chosen Sacred Heart because it helps prepare their children for their vocations.

109. Students at Sacred Heart learn about the vocation of marriage through observing their teachers and staff model true, chaste courtship that results in sacramental marriage in the Catholic Church.

110. The Boutells and Ugolinis sincerely believe the teachings of the Catholic Church that God created each person in His image either male or female and that biological sex is immutable.

111. The Boutells and Ugolinis also sincerely believe the teachings of the Catholic Church that marriage can only exist between one man and one woman and that any sexual acts outside of this procreative, permanent, and exclusive union are gravely sinful.

112. The Boutells and Ugolinis have sent their children to Sacred Heart because of the clear Catholic teaching, through class instruction and example, that their children receive on marriage and sexuality.

113. The Boutells and Ugolinis sincerely believe that if a Catholic institution, like Sacred Heart, was forced to affirm positions contrary to the Church's teachings on marriage and sexuality, it would greatly confuse their impressionable children and hinder their moral and spiritual development.

114. The Boutells and Ugolinis send their children to Sacred Heart so they can learn the truth, goodness, and beauty of the Church's teachings on marriage and sexuality, and because they will not be exposed to anything that contradicts or confuses Catholic teaching.

## VI.   Application of the Act to Sacred Heart

115. Sacred Heart is an "employer" subject to the Act.

116. Sacred Heart is subject to the Act's Education Clause and Education Publication Clause.

117. Based upon the information contained in the Complaint and the job description, it would violate the Act for Sacred Heart to decline to hire an otherwise qualified person for its Facilities and Maintenance Supervisor (Sexton) position because the applicant refused to comply with Sacred Heart's requirement to abstain from same-sex sexual activity.

118. Based upon the information contained in the Complaint and the job description, it would violate the Act for Sacred Heart to decline to hire an otherwise qualified person for a custodian position because the applicant refused to comply with Sacred Heart's requirement to abstain from same-sex sexual activity.

119. Based upon the information contained in the Complaint and the job description, it would violate the Act for Sacred Heart to decline to hire an otherwise qualified person for the athletic coach position referenced in the Complaint at paragraph 279 because the applicant refused to comply with Sacred Heart's requirement to abstain from same-sex sexual activity.

120. It would violate the Employment Clause of the Act for Sacred Heart to decline to hire an otherwise qualified person for a non-ministerial position because the applicant refused to comply with Sacred Heart's requirement to abstain from same-sex sexual activity.

121. The Act's Employment Publication Clause does not apply to oral statements.

122. Sacred Heart's policy requiring non-ministerial employees to swear the oath of fidelity described in paragraph 56 of the Complaint (ECF No. 1) violates the Act's Employment Clause.

123. Sacred Heart's policy of requiring non-ministerial employees to sign and abide by the religious and moral duties outlined in the Faculty Memo and Oath (*see* Exhibit 3) violates the Act's Employment Clause.

124. Sacred Heart's policy requiring non-ministerial employees to publicly swear an "oath of fidelity" to Church teaching at a Mass, as described in paragraph 54 of the Complaint (ECF No. 1), violates the Employment Clause.

125. For non-ministerial positions, the Act prohibits Sacred Heart from limiting, segregating, or classifying employees or applicants for employment in a way that deprives or tends to deprive the employee or applicant of an employment

opportunity, or otherwise adversely affects the status of an employee or applicant "because of," in part, religion, sex, sexual orientation or gender identity. Mich. Comp. Laws § 37.2202(1)(b).

126. For non-ministerial positions, the Act prohibits Sacred Heart from exclusively recruiting and hiring candidates who commit to Catholic faith and doctrine or decline to recruit and hire prospective employees who are unable or refuse to do so.

127. For non-ministerial positions, the Act prohibits Sacred Heart from maintaining policies or practices of only recruiting and hiring candidates who support, live, and model Church teaching and declining to hire those who cannot or will not.

128. For non-ministerial positions, the Act prohibits Sacred Heart from imposing employment-related qualifications and responsibilities on any position and to treat candidates who do not support the Catholic faith and its doctrine differently from those who do—for example, by screening applications on that basis.

129. The Act prohibits Sacred Heart from asking candidates for non-ministerial positions about their commitment to supporting, living, modeling, and sharing the Catholic faith and its doctrine.

130. The Act prohibits Sacred Heart from asking candidates for non-ministerial positions whether they identify as a Catholic, the name of their Catholic parish, or their frequency of Mass attendance.

131. The Act prohibits Sacred Heart from posting employment opportunities for non-ministerial positions on its website or other job-hunting sites which indicate a desire to recruit and hire employees who share Sacred Heart's Catholic faith.

132. Based on the information contained in the Complaint and the job description, the art teacher position identified in the Complaint at paragraph 278 is

a ministerial position exempt from the Employment Clause and Employment Publication Clause of the Act.

133. Based on the information contained in the Complaint and the job description, Defendants do not consider the athletic coach position identified in the Complaint at paragraph 279 to be a ministerial position exempt from the Employment Clause and Employment Publication Clause of the Act.

134. Based on the information contained in the Complaint and the job description, Defendants do not consider Sacred Heart's Facilities and Maintenance Supervisor to be a ministerial position exempt from the Employment Clause and Employment Publication Clause of the Act.

135. Based on the information contained in the Complaint and the job description, Defendants do not consider a custodian position at Sacred Heart to be a ministerial position exempt from the Employment Clause and Employment Publication Clause of the Act.

136. Defendants do not consider non-ministerial positions at Sacred Heart to be exempt from the Employment Clause and Employment Publication Clause of the Act.

137. For non-ministerial positions, Defendants consider it a violation of the Employment Clause and Employment Publication Clause of the Act for Sacred Heart to have a policy of refusing to hire employees who identify as transgender.

138. For non-ministerial positions, Defendants consider it a violation of the Employment Clause and Employment Publication Clause of the Act for Sacred Heart to refuse to retain an employee who comes out as transgender.

139. For non-ministerial positions, Defendants consider it a violation of the Employment Clause and Employment Publication Clause of the Act for Sacred Heart to have a policy of refusing to hire anyone who is not a practicing Catholic whose public life is lived in conformity with all teachings of the church.

140. For non-ministerial positions, Defendants consider it a violation of the Employment Clause and Employment Publication Clause of the Act for Sacred Heart to refuse to hire an applicant because the applicant is lesbian, gay, bisexual, or transgender.

141. Defendants consider it a violation of the Employment Clause and Employment Publication Clause of the Act for Sacred Heart to refuse to hire an applicant for a non-ministerial position because that applicant is in a same-sex marriage that is not consistent with Catholic doctrine.

142. Defendants consider it to be a violation of the Act for Sacred Heart to refuse admission to a student because the student is in a homosexual relationship.

143. Under the Act, Sacred Heart is prohibited from requiring all of its non-ministerial employees to adhere to the standard of conduct referenced in the Complaint at paragraphs 59 and 60.

**WE SO STIPULATE:**

By: s/ *Mark A. Lippelmann*
Katherine L. Anderson
(AZ Bar No. 033104)*
Ryan J. Tucker (034382)*
Mark A. Lippelmann (036553)
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, Arizona 85260
Telephone: (480) 444-0020
Fax: (480) 444-0028
kanderson@adflegal.org
rtucker@adflegal.org
mlippelmann@adflegal.org

David A. Cortman (GA Bar No. 188810)*
**Alliance Defending Freedom**
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, Georgia 30043
Telephone: (770) 339-0774
Fax: (770) 339-6744
dcortman@adflegal.org

John Bursch (P57679)
**Alliance Defending Freedom**
440 First Street, NW, Suite 600
Washington, D.C. 20001
Telephone: (616) 450-4235
jbursch@adflegal.org

Noel Ward Sterett (IL Bar No. 6292008)*
**Alliance Defending Freedom**
44180 Riverside Parkway
Lansdowne, Virginia 20176
Telephone: (571) 707-4655
Fax: (571) 707-4656
nsterett@adflegal.org

*Attorneys for Plaintiffs*

**WE SO STIPULATE:**

By: s/ *Kimberly K. Pendrick*
Kimberly K. Pendrick
Assistant Attorney General
3030 W. Grand Boulevard
Suite 10-666
Detroit, Michigan 48202
Telephone: (517) 930-8842
pendrickk@michigan.gov

Cassandra Drysdale-Crown
Assistant Attorney General
P.O. Box 30736
Lansing, Michigan 48909
Telephone: (517) 335-7659
drysdalecrownc@michigan.gov

*Attorneys for Defendants*